ERIC R. HUBBARD (*pro hac vice*)
Eric.Hubbard@ropesgray.com
ROPES & GRAY LLP
1211 Avenue of the Americas
New York, NY 10036-8704
Telephone: (212) 596-9000
Facsimile: (212) 596-9090

GREGORY M. REISER (*pro hac vice*)
Gregory.Reiser@ropesgray.com
ROPES & GRAY LLP
Prudential Tower
800 Boylston Street
Boston, MA 02199-3600
Telephone: (617) 951-7000
Facsimile: (617) 951-7050

JOSEPH B. PALMIERI (CSB#: 312725)
Joseph.Palmieri@ropesgray.com
ROPES & GRAY LLP
1900 University Avenue, 6th Floor
East Palo Alto, CA 94303-2284
Telephone: (650) 617-4000
Facsimile: (650) 61704090

*Attorneys for Ropes & Gray LLP and
Defendant/Counterclaimant
Foundation Medicine, Inc.*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| GUARDANT HEALTH, INC.,<br><br>            Plaintiff/Counter-defendant,<br><br>    v.<br><br>FOUNDATION MEDICINE, INC.,<br><br>            Defendant/Counterclaimant. | Case No.: 17-cv-03590-JSC<br><br>**REDACTED VERSION OF ROPES & GRAY LLP AND FOUNDATION MEDICINE INC.'S OPPOSITION TO GUARDANT HEALTH, INC.'S MOTION TO DISQUALIFY ROPES & GRAY LLP AS COUNSEL FOR FOUNDATION MEDICINE, INC.**<br><br>**Hon. Jacqueline Scott Corley** |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF CONTENTS

I. INTRODUCTION ................................................................................................ 1

II. FACTUAL BACKGROUND ............................................................................ 3

    A.   In October 2015, Guardant Retained Ropes To Help Position It For A Successful Appeal Of The Examiner's Final Rejection Of Guardant's Request For Continued Examination Of The ███ Patent Application. ....................... 3

    B.   A Billing Disagreement Caused Guardant And Ropes To Significantly Narrow The Scope Of Ropes' Representation. ................................................. 6

    C.   Ropes' Work On The ███ Matter Was Completed In September 2016................. 8

    D.   On March 7, 2017 Ropes Announced Its Intention To Transfer Its Patent Prosecution Business To Another Firm, Triggering A Flurry Of Media Reporting On The Subject.................................................................................... 9

    E.   On April 1, 2017, Guardant Notified Ropes That It Would Be Discharged From The ███ Matter Effective May 1, 2017.................................. 9

    F.   On June 30, 2017, FMI Retained Ropes To Handle The Instant Matter And In Connection With That Retention Ropes Erected An Ethical Wall Safeguarding Guardant's Information And Has Abided By It......................... 10

    G.   On August 1, 2017, Mr. Haley Left Ropes To Form His Own Firm. ....................... 12

    H.   On September 12, 2017, Guardant Filed This Motion To Disqualify Ropes Simultaneously With Its Motion For Preliminary Injunction In An Attempt To Prejudice FMI's Interests. ........................................................ 12

III. LEGAL STANDARD ....................................................................................... 13

IV. ARGUMENT ..................................................................................................... 14

    A.   Guardant Was Not A Current Client When FMI Engaged Ropes To Represent It In This Case ............................................................................. 14

        1.   Ropes' Representation Of Guardant In The ███ Matter Ended On September 13, 2016.......................................................................... 14

        2.   Guardant Discharged Ropes From The ███ Matter Effective May 1, 2017. .......................................................................................... 15

    B.   Guardant's "Reasonably Objective Expectation" Has No Bearing On Whether Guardant Was A Client Of Ropes On June 30, 2017, But Even If It Did, Guardant Could Not Have Had Such An Expectation............................... 16

ROPES & GRAY LLP AND DEFENDANT FOUNDATION MEDICINE INC.S
OPPOSITION TO PLAINTIFF GUARDANT HEALTH, INC.'S MOTION TO DISQUALIFY
ROPES & GRAY LLP AS COUNSEL FOR DEFENDANT FOUNDATION MEDICINE, INC.
Case No. 17-CV-03590-JS

C.    There Is No Substantial Relationship Between Ropes' Patent Work For Guardant And This False Advertising Case Because Ropes Did Not Receive Any "Material" Guardant Information.............................................................................. 17

D.    Guardant's Disqualification Motion Is Tactically Based And, If Granted, Would Severely Prejudice FMI's Interests. .......................................................... 20

V.  Conclusion ...................................................................................................... 22

ROPES & GRAY LLP OPPOSITION TO PLAINTIFF GUARDANT HEALTH, INC.'S MOTION TO DISQUALIFY ROPES & GRAY LLP AS COUNSEL FOR DEFENDANT FOUNDATION MEDICINE, INC.
Case No. 17-CV-03590-JS

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Federal Cases**

4

*Beltran v. Avon Prods., Inc.*,
   867 F. Supp. 2d 1068 (C.D. Cal. 2012) ............................................................... 18

*California Earthquake Auth. v. Metro. W. Sec., LLC*,
   712 F. Supp. 2d 1124 (E.D. Cal. 2010) ............................................................... 16

*Corns v. Laborers Int'l Union of N. Am.*,
   No. 09-CV-4403 YGR, 2014 WL 1319306 (N.D. Cal. Mar. 31, 2014) ................ 13

*Glaxo Grp. Ltd. v. Genentech, Inc.*,
   No. SA 10-CV-2764-MRP, 2010 WL 11074653 (C.D. Cal. June 15, 2010) ........ 19

*IPVX Patent Holdings, Inc. v. 8x8, Inc.*,
   No. 413CV01707SBAKAW, 2013 WL 6700303 (N.D. Cal. Dec. 19, 2013) ........ 13

*Kelly v. Roker*,
   No. C 11-05822 JSW, 2012 WL 851558 (N.D. Cal. Mar. 13, 2012) .................... 21

*LeapFrog Enterprises, Inc. v. Epik Learning, LLC*,
   No. 16-CV-04269-EDL, 2017 WL 2986604 (N.D. Cal. Feb. 23, 2017) ......... 16, 20

*Love v. Permanente Med. Grp.*,
   No. 12-CV-05679-WHO, 2013 WL 5273213 (N.D. Cal. Sept. 18, 2013) ............. 13

*Visa U.S.A., Inc. v. First Data Corp.*,
   241 F. Supp. 2d 1100 (N.D. Cal. 2003) ........................................................ 1, 13, 20

**California Cases**

*Banning Ranch Conservancy v. Superior Court*,
   193 Cal. App. 4th 903, 123 Cal. Rptr. 3d 348 (2011) .......................................... 15

*Baugh v. Garl*,
   137 Cal. App. 4th 737 (2006) .............................................................................. 13

*In re Charlisse C.*,
   45 Cal.4th 145, 84 Cal.Rptr.3d 597, 194 P.3d 330 (2008) .................................. 18

*People ex rel. Dep't of Corps. v. SpeeDee Oil Change Sys., Inc.*,
   20 Cal. 4th 1135, 980 P.2d 371 (1999) ............................................................... 13

*Farris v. Fireman's Fund Ins. Co.*,
   119 Cal. App. 4th 671, 14 Cal. Rptr. 3d 618 (2004) ............................................ 18

5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*Fracasse v. Brent*,
  6 Cal. 3d 784, 494 P.2d 9 (1972) ........................................................................... 15

*Morrison Knudsen Corp. v. Hancock, Rothert & Bunshoft*,
  69 Cal.App. 4th 223 ............................................................................................... 17

*Vella v. Hudgins*,
  151 Cal. App. 3d 515, 198 Cal. Rptr. 725 (Ct. App. 1984) .................................... 15

**Federal Statutes**

Lanham Act ...................................................................................................................... 3, 11

**California Statutes**

Cal. Civ. Code
  § 1636 ..................................................................................................................... 15

ROPES & GRAY LLP OPPOSITION TO PLAINTIFF GUARDANT HEALTH, INC.'S
MOTION TO DISQUALIFY ROPES & GRAY LLP AS COUNSEL FOR DEFENDANT
FOUNDATION MEDICINE, INC.
Case No. 17-CV-03590-JS

ii

1

## I.    INTRODUCTION

2        Plaintiff Guardant Health, Inc.'s ("Guardant's") supposed "alarm" that Ropes & Gray

3   LLP ("Ropes") is counsel for Defendant Foundation Medicine, Inc. ("FMI") in this case is not

4   credible.  When Guardant engaged Ropes in 2015 to join its two other outside firms in

5   representing it in a limited-scope patent prosecution matter, it acknowledged that Ropes was

6   free to litigate against Guardant in unrelated matters.[1]  Ropes' relationship with Guardant was

7   neither "substantial" nor "ongoing" on June 30, 2017 when Ropes was retained by FMI for this

8   case (a retention that Ropes expressly disclosed days later to Guardant's counsel).  Indeed,

9   Guardant's motion is merely an improper effort to gain a tactical advantage against FMI that

10  should be denied.

11       By any objective measure, Guardant had ceased to be a Ropes client well before FMI

12  retained Ropes for this case.  Ropes' agreed-upon work on the patent prosecution matter for

13  which it was initially retained (the "██████ Matter") was concluded by mid-September 2016,

14  and Guardant had discharged Ropes from its work on a later-added patent opinion matter (the

15  "██████ Matter") as of May 1, 2017.

16       Nor can there be any doubt that the conclusion of Ropes' work on these two matters

17  terminated Ropes' attorney-client relationship with Guardant.  Ropes' engagement letter with

18  Guardant provided that the representation would be automatically terminated upon Ropes'

19  completion of the work for which it was engaged or upon notice from either party.  Both events

20  had occurred by May 1.  Ropes could not have continued to perform patent-related services for

21  Guardant, even if Guardant had requested them, because on March 7, 2017, Ropes announced to

22  the world that it would soon be exiting the patent rights management business, which in fact it

23  did on July 31, 2017.

24

25

26  [1] In view of *Visa's* requirement that advance waivers identify, at a minimum, the name of a
    client the law firm might represent against the client providing the advance waiver, Ropes is not
27  now urging that the advance conflicts waiver in Guardant's engagement letter nullifies
    Guardant's assertion of a current client conflict.  *See Visa U.S.A., Inc. v. First Data Corp.*, 241
28  F. Supp. 2d 1100 (N.D. Cal. 2003).  But Guardant's consent to such a waiver as a sophisticated
    user of legal services is important to evaluating Guardant's professed concern about Ropes'
    involvement in this case as FMI's counsel.

ROPES & GRAY LLP AND DEFENDANT FOUNDATION MEDICINE INC.S
OPPOSITION TO PLAINTIFF GUARDANT HEALTH, INC.'S MOTION TO DISQUALIFY
ROPES & GRAY LLP AS COUNSEL FOR DEFENDANT FOUNDATION MEDICINE, INC.
Case No. 17-CV-03590-JS

1     Guardant's assertion that Ropes "conveniently determined" on the eve of its retention by

2     FMI that its representation of Guardant had ended also is demonstrably false.   In May of 2017,

3     when then-Ropes partner James F. Haley, Jr. was reaching out to current clients to ask if they

4     wanted representation by his new firm, he did not include Guardant because he considered his

5     Guardant representation to have concluded before the FMI case was filed.

6          Because Guardant was a former client, Ropes could only have a disqualifying conflict

7     representing FMI against Guardant in this false advertising case if Guardant could establish with

8     specificity that Ropes' completed patent work for Guardant is "substantially related" to the work

9     it is performing for FMI in this case.   In this false advertising case, the claims at issue concern

10    how accurate the parties' cancerous tumor detection assays are, as measured and assessed in

11    certain ways.   The false advertising claims do not concern anything that could have been

12    relevant to the patent work Ropes did for Guardant, namely, how the assays were developed or

13    are manufactured, or how the assays actually identify genomic mutations (i.e., the specific

14    biochemical processes and mathematical algorithms that enable the tumor detection assays to

15    identify genomic mutations).   Indeed, for purposes of this case the details of the operation of the

16    parties' respective products are "black boxes".   What matters in this case is *how the parties*

17    *advertise the results of using* those black boxes.   Ropes did not advise, or receive material

18    confidential information from, Guardant concerning the issues in this case and, as such, there is

19    no former client conflict.

20         The weakness of Guardant's conflicts arguments underscores the fact that Guardant's

21    motion is nothing more than an improper attempt to gain a litigation advantage over FMI.

22    Although Guardant first learned that Ropes would represent FMI in this case on July 10, 2017, it

23    waited over two months until September 12, 2017 to file its motion to disqualify Ropes.   And on

24    *the very day it moved to disqualify, Guardant also filed its motion for a preliminary injunction,*

25    requiring FMI (and its counsel) to address a critical substantive motion on an expedited basis

26    while also defending its choice of counsel.   While Guardant's motion and its September 20,

27    2017 letter to the Court make much of Guardant's supposed concern that FMI's Ropes lawyers

28    could use Guardant's privileged and confidential information against it, Guardant's own actions

ROPES & GRAY LLP OPPOSITION TO PLAINTIFF GUARDANT HEALTH, INC.'S
MOTION TO DISQUALIFY ROPES & GRAY LLP AS COUNSEL FOR DEFENDANT
FOUNDATION MEDICINE, INC.
Case No. 17-CV-03590-JS

2

1    make clear that concern is specious.   In connection with its preliminary injunction motion

2    Guardant advocated for, and is pursuing, a discovery schedule that necessarily will require

3    Ropes to be heavily involved in FMI's defense of this case while this motion is under

4    consideration.  If Guardant truly thought that Ropes' presence as FMI's counsel would unfairly

5    advantage FMI in this case, it easily could have sought a schedule that would have allowed this

6    motion to be resolved prior to pursuing the preliminary injunction motion.  But it did not choose

7    that path.

8         Finally, Ropes' disqualification from this case would significantly prejudice FMI.  FMI

9    chose Ropes to defend it because of Ropes' partner Peter Brody's substantial expertise with

10   Lanham Act cases, including, in particular, in the life sciences industry in which the parties

11   operate.  As of this filing, Mr. Brody and his team, none of whom performed any work for

12   Guardant when it was a Ropes client, have already collectively spent over a thousand hours on

13   the defense of FMI.  A substantial amount of that time had been spent even before Guardant's

14   motion was filed.  By the time this motion is heard, far more work will have been done, and

15   many more hours spent, by Ropes lawyers on behalf of FMI.

16        If Ropes is disqualified at this stage, FMI will be prejudiced by the need to select new

17   counsel and get that counsel prepared to defend it while the preliminary injunction proceedings

18   continue to move rapidly.  By contrast, Guardant will suffer no prejudice if Ropes remains in

19   the case; its confidential information is secure behind an ethical wall and none of the Ropes

20   attorneys and Technical Advisors who worked for Guardant are still with Ropes.  In practical

21   terms, it is no different than if an entirely separate law firm were representing FMI in this case.

22        The Court should deny Guardant's motion to disqualify Ropes.

23   **II.    FACTUAL BACKGROUND**

24        **A.    In October 2015, Guardant Retained Ropes To Help Position It For A
         Successful Appeal Of The Examiner's Final Rejection Of Guardant's
25       Request For Continued Examination Of The ▇▇▇▇ Patent Application.**

26        In late 2015, Guardant's outside patent counsel, John Storella of John Storella P.C.,

27   contacted Mr. Haley to see if he would be interested in assisting Guardant, together with

28   Guardant's patent counsel at Wilson Sonsini Goodrich and Rosati ("Wilson Sonsini"), in

ROPES & GRAY LLP OPPOSITION TO PLAINTIFF GUARDANT HEALTH, INC.'S
MOTION TO DISQUALIFY ROPES & GRAY LLP AS COUNSEL FOR DEFENDANT
FOUNDATION MEDICINE, INC.
Case No. 17-CV-03590-JS

3

1    preparing a Request for Continued Examination ("RCE") of pending U.S. patent application

2    █████████ (the '████ Application"); as of that time, Guardant was not a Ropes client.  [Haley

3    Decl., ¶ 3].  Mr. Storella knew Mr. Haley because the two had worked closely together at Fish &

4    Neave LLP, an intellectual property boutique law firm that later merged with Ropes.  [Haley

5    Decl., ¶ 2].  Mr. Storella explained that in particular Guardant was looking for Mr. Haley's

6    expertise in readying the ████ Application for a possible appeal of a final rejection by the U.S.

7    Patent Examiner (the "Examiner").  [*Id.*, ¶ 3].

8         On October 2, 2015, Ropes and Guardant entered into an engagement letter (the

9    "Engagement Letter") stating that Ropes would represent Guardant together with Wilson

10   Sonsini  and Mr. Storella's law firm "in connection with the prosecution of [the ████

11   Application] including a potential appeal to the Patent Trial and Appeal Board on █████████

12   ████ and if unsuccessful, an appeal to the Federal Circuit."  (the '████ Matter').  [Haley

13   Decl., ¶ 4; Ex. B].  As of the date of the Engagement Letter, the scope of engagement

14   contemplated that Ropes would remain as counsel through an appeal to the Federal Circuit, if

15   necessary, but later conduct by Guardant and a later agreement with Mr. Storella significantly

16   narrowed Ropes' scope of engagement.  [*Id.*].

17        Importantly, the Engagement Letter provides that the representation will automatically

18   terminate "when [Ropes has] completed [its] work on the matters for which [Guardant has]

19   engaged [Ropes], or when either [Ropes or Guardant] informs the other that the representation

20   has ended…"  [Haley Decl., Ex. B].  Ropes includes this provision in its standard form of

21   engagement letter in order to have certainty about the end point for a representation, in part so

22   that it can accurately assess whether conflicts associated with the representation might exist.

23   The Engagement Letter also contains an advance conflict waiver pursuant to which Guardant

24   agreed that Ropes could represent clients adversely to it in any matters, including litigation

25   matters, provided they are not substantially related to any matter in which Ropes represents or

26   represented Guardant, and with the understanding that Ropes would not disclose any

27   confidential information to, or use it on behalf of, any other party.  [*Id.*].

28

ROPES & GRAY LLP OPPOSITION TO PLAINTIFF GUARDANT HEALTH, INC.'S
MOTION TO DISQUALIFY ROPES & GRAY LLP AS COUNSEL FOR DEFENDANT
FOUNDATION MEDICINE, INC.
Case No. 17-CV-03590-JS

4

1    Ropes understood that Wilson Sonsini was primary prosecution counsel for Guardant on

2    the ███ Application.  [Haley Decl., ¶ 5].  Throughout this matter, Ropes' interaction with

3    Guardant was primarily either through Mr. Storella or Wilson Sonsini.  [*Id.*].  Mr. Haley recalls

4    speaking to Guardant personnel directly on only a couple of occasions.  [*Id.*].

5        Mr. Haley and a Ropes colleague began work on the ███ Matter in the fall of 2015.

6    [Haley Decl., ¶ 6].  Ropes' first course of action was to ████████████████████████████

7    █████████████████████████████████████████████████████████████████████████

8    ███████████████████████████████████████████████████████████████████████████

9    ███████████████████████████████████████████████████████  Ropes

10   retained the services of ██████████████████████ and worked with him to prepare a

11   declaration setting forth his views of the state of the prior art at the relevant time in the fields of

12   DNA cancer diagnosis and nucleic acid expression and amplification.  [*Id.*].  The goal was to

13   █████████████████████████████████████████████████████████████████████

14   ███████████████████████████████████████████████████████████████████████.

15       In working with ███████ on his declaration, Ropes and ███████ only referenced

16   publicly available information, principally scientific publications.  [Haley Decl., ¶ 7].  The

17   purpose of the declaration was ████████████████████████████████████████████

18   ███████████████████████.  [*Id.*].  Dr. Pantel's opinions were therefore necessarily

19   rooted in publicly available disclosures—not confidential or privileged materials.  [*Id.*].  Indeed,

20   using any materials or knowledge not publically known would have undermined ████████

21   analysis and its purpose.  [*Id.*].  In the fall of 2015, Ropes also began to assist Wilson Sonsini in

22   considering possible amendments to the rejected claims to place them in a form that would

23   overcome the rejections or at least put the claims in a better form for any eventual appeal.

24   [Haley Decl., ¶ 8].  The goal was to present claims to the Examiner that ████████████████

25   ████████████████████████████████████████████████████████

26   ████████████████████████.  [*Id.*].  Importantly, this work did not involve a

27   detailed assessment of whether the amended claims would cover any particular product,

28   including that of Guardant.  [*Id.*]

ROPES & GRAY LLP OPPOSITION TO PLAINTIFF GUARDANT HEALTH, INC.'S
MOTION TO DISQUALIFY ROPES & GRAY LLP AS COUNSEL FOR DEFENDANT
FOUNDATION MEDICINE, INC.

Case No. 17-CV-03590-JS

1

**B.     A Billing Disagreement Caused Guardant And Ropes To Significantly Narrow The Scope Of Ropes' Representation.**

2       On February 25, 2016, Mr. Haley sent Guardant a letter containing Ropes' first invoice

3    for the ███ Matter and at that time he estimated $30,000 to $40,000 for work going forward

4    through the planned Examiner's interview (the "Interview").  [Haley Decl., ¶ 9; Ex. C].  Mr.

5    Haley based the estimate on the expected future work (the cost and timing of which Mr. Haley

6    said were "a bit difficult to estimate") of:  (1) assisting Wilson Sonsini in preparing a response

7    to the outstanding Office Action and Advisory Action; (2) assisting Wilson Sonsini in preparing

8    one or more expert declarations in support of that response; and (3) preparing for and

9    conducting an in-person interview with the Examiner handling the application.  [*Id.*]  However,

10   Ropes' subsequent work on the ███ Matter significantly exceeded this estimate due to Ropes'

11   unexpectedly extensive work on ████ declaration, and on working with Wilson Sonsini

12   in reviewing and commenting on several drafts of a declaration by ████, several drafts

13   of a detailed response to the pending Office Action, and in working with Wilson Sonsini to draft

14   amended claims.  [Haley Decl., ¶ 9].

15       On June 20, 2016, Ropes sent Guardant its second and final invoice for its work on the

16   ███ Matter.  [Haley Decl., ¶ 11].  The accompanying letter indicated that even with a 30%

17   courtesy discount the total bill, $87,000, was "substantially higher than the $30-40k estimate in

18   the February invoice."  [*Id.*; Ex. D].  Within two days, on June 22, 2016, Mr. Storella emailed

19   Mr. Haley and said "I need to talk to you about the recent invoice.  It is considerably over

20   budget and, I am afraid, unacceptable."  [*Id.*; Ex. E].  In May 2016, before Mr. Haley had sent

21   Guardant the June invoice, Mr. Storella had asked Ropes to prepare an opinion on U.S. patent

22   ████ (the "███ Matter").  [Haley Decl., ¶ 12].  However, on June 29, 2016, Mr.

23   Storella emailed Mr. Haley and told him not to begin work on the ███ Matter "until we

24   resolve the ███ invoice issue."  [*Id.*; Ex. F].  "Headline—it needs to be in line with the

25   estimate you gave Guardant."  [*Id.*]

26       On July 8, 2016, Mr. Storella once again emailed Mr. Haley reiterating his and

27   Guardant's dissatisfaction, stating:

28

ROPES & GRAY LLP OPPOSITION TO PLAINTIFF GUARDANT HEALTH, INC.'S
MOTION TO DISQUALIFY ROPES & GRAY LLP AS COUNSEL FOR DEFENDANT
FOUNDATION MEDICINE, INC.
Case No. 17-CV-03590-JS

6

1

2

3

4

5

  "The estimate you gave to take this project through an interview was $30-40K. Your invoice, which covered getting the RCE on file only, was more than double this. This is a sort of risk the [sic] Guardant should not bear as it was entirely under your control. If your letter had given an $80K estimate, I am sure Guardant would have refused. Frankly, I would have too. **At this point, I am not sure we would agree to have you continue working on the case or if you want to**. However, we can broach that subject on Tuesday. It really pains me to say this, as you know I have such deep respect for you." (emphasis added) [Haley Decl., ¶ 13; Ex. G].

6

7

8

9

10

11

12

13

14

15

On or around July 12, 2016, Mr. Haley discussed the June invoice and Ropes' work on the ███ Matter with Mr. Storella. [Haley Decl., ¶ 14]. Mr. Storella indicated Guardant was very unhappy with how much the fees had exceeded Mr. Haley's February estimate. [*Id.*]. Mr. Haley explained that Ropes' work had been much more extensive than planned but agreed to work with Ropes to find a middle ground. [*Id.*] Either during that call or over the next few days Mr. Haley proposed the following: Guardant would pay $40,000 toward the $87,000 invoice and the remaining $47,000 would be allocated to other possible work on the ███ Matter, the ███ Matter, or some other future matter, becoming payable only in compensation for Ropes' actual work on those matters. [*Id.*] The agreement was that Ropes would effectively write off the $47,000 but could earn it back on the basis of future work. [*Id.*]

16

17

18

  On July 21, 2016, Mr. Storella emailed Mr. Haley saying:

  Thanks for your offer to adjust the invoice on the ███ matter. I discussed your offer with [Guardant]. [Guardant] will accept the following arrangement:

19

20

  $40K of the $87K invoice will go to settle your work to date on the ███ project. The remained [sic] of about $47K will be allocated to projects in any combination as follows:

21

22

   • $10K flat rate for you to prepare for and attend an interview on the ███ case at the USPTO with [Wilson Sonsini].

23

   • $40K flat rate for an opinion of non-infringement/invalidity of the ███ patent.

24

25

   • Any amount left over (if you do not do one of these projects) to a future project.

26

27

28

[Haley Decl., ¶ 15; Ex. H]. This email sets forth the parties' modified understanding about the scope of work Ropes was expected to perform going forward. [*Id.*]. It is narrower than what is set forth in the Engagement Letter because the only work on the ███ Matter recited was the

ROPES & GRAY LLP OPPOSITION TO PLAINTIFF GUARDANT HEALTH, INC.'S MOTION TO DISQUALIFY ROPES & GRAY LLP AS COUNSEL FOR DEFENDANT FOUNDATION MEDICINE, INC.

Case No. 17-CV-03590-JS

7

1    Interview; no potential appeal to the PTAB or Federal Circuit was indicated by Guardant during

2    the related discussion or the email.  [*Id.*]  Mr. Haley viewed this agreement with Guardant as

3    Ropes' concession that it would have to "write-off" the $47,000 unless it happened to earn it

4    through future projects that were not anticipated at that time.  [*Id.*].

5        On July 22, 2016, Mr. Haley responded to Mr. Storella and said "Thanks for your

6    understanding.  We look forward to continuing to work with Guardant."  [Haley Decl., ¶ 16; Ex.

7    I].  This statement reflects Mr. Haley's belief that Ropes would assist Guardant with the

8    Interview, the ███████ Matter, and perhaps some further unspecified matters but only if the

9    invoices for Ropes' work on the ████ Matter and the ██████ Matter did not exceed $47,000,

10   which Mr. Haley believed they would.  [Haley Decl., ¶ 16].

11       **C.    Ropes' Work On The ██████ Matter Was Completed In September 2016.**

12       Despite this agreement, on ████████████, the Interview took place, but Mr. Haley

13   was not asked to attend the Interview or participate in it by phone.  [Haley Decl., ¶ 17].  Mr.

14   Haley assumed, but was not told, this was because the prosecution strategy was in place and

15   Guardant did not want to overwhelm the Examiner with representatives beyond its counsel of

16   record.[2]   [*Id.*].

17       Mr. Haley did assist Wilson Sonsini in preparing for the Interview.  [*Id.*]  The last time

18   Mr. Haley recorded time on the ████ Matter was September 6, 2016 when Mr. Haley was part

19   of a conference call in preparation for the Interview.  [*Id.*].  Mr. Haley did not bill Guardant for

20   this time because he viewed his participation in the call to be of little substance.  [*Id.*]

21       On September 13, 2016, Wilson Sonsini circulated an email summary of the Interview to

22   Mr. Haley, Mr. Storella and Guardant.  [Haley Decl., ¶ 18; Ex.  J].  Subsequent to the Interview,

23   Guardant, advised by Wilson Sonsini, decided to amend its claims in light of the discussion at

24   the Interview.  [*Id.*].  Wilson Sonsini, took responsibility to make those amendments.  [*Id.*].  Mr.

25   Haley was not asked to participate in the amendment process.  [*Id.*]  Following the amendment,

26   the only communications Ropes had with Guardant or Wilson Sonsini on the ████ Matter

27   ───────────────────────────────────

28   [2] Mr. Haley has no knowledge of Mr. Storella's statement that he was asked not to attend the
     Interview because Guardant wanted Mr. Haley to work on the ██████ Matter, and Mr. Haley
     does not recall that reason being communicated to him.  [Haley Decl., ¶ 17].

ROPES & GRAY LLP OPPOSITION TO PLAINTIFF GUARDANT HEALTH, INC.'S
MOTION TO DISQUALIFY ROPES & GRAY LLP AS COUNSEL FOR DEFENDANT
FOUNDATION MEDICINE, INC.

1  pertained to the fees charged by Dr. Pantel, which Ropes had paid and for which Ropes sought

2  reimbursement from Guardant.[3]  [Haley Decl., ¶ 19].  Mr. Haley viewed the fact that he was not

3  asked to participate in the amendment process as further confirmation that, under the terms of

4  Mr. Storella's July 21, 2016 email, Ropes' engagement on the ███████ Matter was over upon the

5  conclusion of the Interview on September 13, 2016.  [Haley Decl., ¶ 18].

6         **D.**    **On March 7, 2017 Ropes Announced Its Intention To Transfer Its Patent
7  Prosecution Business To Another Firm, Triggering A Flurry Of Media
   Reporting On The Subject.**

8  On March 7, 2017 Ropes announced that:

9      Over the coming months, the firm will work closely and collaboratively with
10  partner Joe Guiliano, who is establishing a new firm with other Ropes &
   Gray partners in the IP rights management practice. The new firm will house much of
   Ropes & Gray's patent prosecution business going forward and offer clients the
11  same high standards of patent prosecution and other related services that they have
   come to expect. Other Ropes & Gray lawyers, Technical Advisors and staff in the
12  IP rights management practice are expected to join the new firm. [Reiser Decl., ¶
   6; Ex. C].
13

14  On or about March 7, 2017, a number of articles were written about this development, which

15  was of great interest to members of the intellectual property legal community.  [Reiser Decl., ¶

16  7; Ex. D].  These articles reflect Ropes' confirmation to the press at this time that it planned to

17  exit the patent rights management practice and hoped to transfer its entire patent prosecution

18  practice to the new firm.  [*Id.*]

19      In late June, it was publicly reported that Ropes would cease providing patent

20  prosecution services as of August 1, 2017, and further that Mr. Haley would be joining the

21  intellectual property rights management practice that he and Mr. Guiliano planned to form.

22  [Reiser ¶ 8-9; Exs. E & F].

       **E.**    **On April 1, 2017, Guardant Notified Ropes That It Would Be Discharged
23  From The ███████ Matter Effective May 1, 2017.**

24      As a part of the July 21, 2016 agreement to modify the scope of Ropes' work for

25  Guardant, Ropes was asked to prepare an opinion of non-infringement/invalidity of the

26

27  [3] Mr. Haley, one associate, and one Technical Advisor are the only legal personnel who worked
   on the ███████ Matter while at Ropes.  [Haley Decl., ¶ 6].  The associate left Ropes on September
28  2, 2016 and Mr. Haley and the Technical Advisor left Ropes as of August 1, 2017 to join a new
   firm, Haley Guiliano LLP ("Haley Guiliano").  [*Id.*].

ROPES & GRAY LLP OPPOSITION TO PLAINTIFF GUARDANT HEALTH, INC.'S
MOTION TO DISQUALIFY ROPES & GRAY LLP AS COUNSEL FOR DEFENDANT
FOUNDATION MEDICINE, INC.
Case No. 17-CV-03590-JS

1  ███████ patent, which was owned by ████████████████. [Haley Decl., ¶ 15; Ex.

2  H]. In the latter part of 2016 and early 2017, Mr. Storella, who was Ropes' exclusive contact on

3  the ██████ Matter, reached out to Mr. Haley several times to check on the status of that

4  matter. [Haley Decl., ¶ 22]. Mr. Haley indicated he had assigned the matter to a Technical

5  Advisor to handle and would follow up with her, but the work was never performed. [*Id.*].

6          On April 1, 2017, shortly after Ropes had announced its plan to exit the intellectual

7  property rights management practice, Mr. Storella emailed Mr. Haley stating: "Please confirm

8  that you can provide Guardant with an opinion letter by May 1. If not, I'll have to find another

9  firm to work on it." [Haley Decl., ¶ 23; Ex. L]. Ropes did not meet that deadline and Storella

10  made no further inquiries of Haley concerning progress on the ██████ Matter. [*Id.*]. As of

11  May 1, 2017, Guardant had discharged Ropes from the ██████Matter. [*Id.*]. Accordingly,

12  under the July 21, 2016 agreement concerning the scope of Ropes' work, and pursuant to the

13  termination provision in the Engagement Letter, Ropes' attorney-client relationship with

14  Guardant was concluded by May 1, 2017. [Haley Decl., ¶ 23; Ex. B].[4]

15          **F.    On June 30, 2017, FMI Retained Ropes To Handle The Instant Matter And**
              **In Connection With That Retention Ropes Erected An Ethical Wall**
16            **Safeguarding Guardant's Information And Has Abided By It.**

17          On June 30, 2017, two (2) months after Ropes' limited work for Guardant had ended,

18  FMI engaged Ropes to represent it in this case after Ropes had conducted a careful conflict

19  check that revealed there were no conflicts. [Brody Decl., ¶ 4; Reiser Decl., ¶ 2]. That conflict

20  check identified Mr. Haley's work for Guardant, which was determined to have ended. [Reiser

21  Decl., ¶ 2] Prior to this date, Ropes had represented FMI in various transactional matters.

22  [Brody Decl., ¶ 3].

23

24  [4] The only time recorded by Ropes on the ██████ Matter was (i) on August 3, 2016, when Mr.
    Haley spoke to Mr. Storella about the matter and reviewed the ██████ patent and (ii) on
25  August 24, 2016 and December 20, 2016, when Ropes Technical Advisor Gitanjali
    Chimalakonda reviewed the patent and conducted background research. [Haley Decl., ¶ 20].
26  Mr. Haley and a Technical Advisor are the only Ropes personnel who "worked" on the
    ██████Matter. [*Id.*]. The Technical Advisor left Ropes in late July 2017 to join another firm
27  in New York, New York. [*Id.*]

28

ROPES & GRAY LLP OPPOSITION TO PLAINTIFF GUARDANT HEALTH, INC.'S
MOTION TO DISQUALIFY ROPES & GRAY LLP AS COUNSEL FOR DEFENDANT
FOUNDATION MEDICINE, INC.

Case No. 17-CV-03590-JS

1   In connection with this retention, Ropes created a precautionary ethical wall pursuant to

2   its standard practice of doing so whenever it accepts representation adverse to a former client in

3   a litigation matter.[5]  [Reiser Decl., ¶ 3].  Guardant's claim that the ethical wall Ropes

4   established has been breached on the basis that Mr. Brody reviewed Mr. Storella's July 21, 2016

5   email is false.  In fact, Mr. Brody had seen only the Engagement Letter until he received

6   William Smith's August 4, 2017 letter to him, which referred to Mr. Storella's July 21, 2016

7   email. [Brody Decl., ¶ 5, 8].  It is breathtakingly disingenuous for Guardant now to accuse

8   Ropes of breaching the ethical wall when Mr. Brody then reviewed the email in order to respond

9   to Mr. Smith's characterization of it.  In any event, neither the Engagement Letter nor the July

10  21, 2016 email contain any confidential Guardant information that is in any way related to this

11  case, and Mr. Haley did not share with Mr. Brody or anyone representing FMI in this case any

12  of the very limited amount of confidential information he obtained in connection with his

13  substantive work for Guardant.[6]  [Haley Decl., ¶ 27].

14  FMI hired Ropes because Mr. Brody has extensive experience handling false advertising

15  cases under the Lanham Act, including in the life sciences sector in which this dispute arises.

16  [Brody Decl., ¶ 3].  Mr. Brody and his team have collectively worked over a thousand hours on

17  this case and have: (i) thoroughly investigated the claims of the Complaint, (ii) prepared a

18  detailed Answer, (iii) drafted and filed Counterclaims, (iv) drafted and served discovery

19  requests, (v) engaged with Guardant's counsel and FMI regarding Guardant's discovery

20  requests, (vi) largely concluded negotiations on a protective order with Guardant's counsel, and

21  (vii) substantially completed work on a joint case management conference statement.  [Brody

22  Decl., 16-18, 20-24].  The parties are in the midst of expedited bilateral written discovery and

23

24  [5] Using an industry-standard ethical wall software program, Ropes has denied anyone working
25  on the instant matter access to Guardant documents and has instructed them not to try to access
    those documents.  [Reiser Decl., ¶ 3].

26  [6] While they were both employed by Ropes, Messrs. Brody and Haley worked out of separate
27  offices, in separate practice groups and departments: Mr. Brody is in the Intellectual Property
    Litigation Group of the Litigation Department, based in Ropes' D.C. office and Mr. Haley was
28  in the Intellectual Property Rights Management Group of the Corporate Department, based in
    Ropes' New York office.  [Brody Decl., ¶ 1; Haley Decl., ¶ 1].

ROPES & GRAY LLP OPPOSITION TO PLAINTIFF GUARDANT HEALTH, INC.'S
MOTION TO DISQUALIFY ROPES & GRAY LLP AS COUNSEL FOR DEFENDANT
FOUNDATION MEDICINE, INC.
Case No. 17-CV-03590-JS

1  are planning for depositions to take place during the last week of October (when the Court will

2  hear this motion) and the first week of November.  [Brody Decl., ¶ 22].

3      **G.    On August 1, 2017, Mr. Haley Left Ropes To Form His Own Firm.**

4  In late May 2017, shortly after Mr. Haley decided he would leave Ropes to found Haley

5  Guiliano LLP, he reached out to his current clients to inform them of that decision.  [Haley

6  Decl., ¶ 24]  Mr. Haley did not reach out to Guardant because he did not consider it to be a

7  current client.  [*Id.*]  On August 1, 2017, Mr. Haley left Ropes to form Haley Guiliano LLP.

8  [Haley Decl. ¶ 1].

9

10     **H.    On September 12, 2017, Guardant Filed This Motion To Disqualify Ropes
              Simultaneously With Its Motion For Preliminary Injunction In An Attempt
              To Prejudice FMI's Interests.**

11

12  On July 10, 2017, Mr. Brody informed Guardant's counsel that Ropes would be

13  representing FMI in this case and asked for an extension on the answer; at that time, Guardant's

14  counsel said he would confirm whether Guardant agreed to the extension and later that day

15  Guardant's counsel got back to Mr. Brody without mentioning any conflict.  [Brody Decl., ¶ 6].

16  Ropes entered its appearance on July 14 and on that day conferred again with Guardant's

17  counsel about case scheduling, but again no conflict issue was raised.  [Brody Decl., ¶ 7].

18  Guardant did not raise the conflicts issue with Ropes until July 27, 2017 in a letter from

19  Guardant's in-house lawyer, William Smith, to Mr. Haley.  [Reiser Decl. ¶ 10, Ex. G].  And

20  Guardant did not file this motion until September 12, 2017, the same day on which it filed its

21  motion for a preliminary injunction.  [Dkt. 32].

22  When Guardant raised the conflicts issue it demanded Ropes withdraw from

23  representing FMI in this case.  [Reiser Decl. ¶ 10, Ex. G].  Ropes rejected Guardant's assertion

24  that a conflict necessitating such a withdrawal existed, and was obliged to do its utmost to

25  remain FMI's counsel in this case because FMI was a pre-existing client, [Brody Decl. ¶ 3], and

26  had chosen Ropes to represent it in this case.

27

28

ROPES & GRAY LLP OPPOSITION TO PLAINTIFF GUARDANT HEALTH, INC.'S
MOTION TO DISQUALIFY ROPES & GRAY LLP AS COUNSEL FOR DEFENDANT
FOUNDATION MEDICINE, INC.
Case No. 17-CV-03590-JS

12

## III.    LEGAL STANDARD

"Because of their susceptibility to tactical abuse, [m]otions to disqualify counsel are strongly disfavored and should be subjected to particularly strict judicial scrutiny." *Love v. Permanente Med. Grp.*, No. 12-CV-05679-WHO, 2013 WL 5273213, at *3 (N.D. Cal. Sept. 18, 2013) (quoting *Oracle Am., Inc. v. Innovative Tech. Distrib., LLC*, 11–CV–01043–LHK, 2011 WL 2940313, at * 4 (N.D. Cal. July 20, 2011)) (internal quotations omitted).  "A motion for disqualification of counsel is a drastic measure which courts should hesitate to impose except when of absolute necessity.  They are often tactically motivated; they tend to derail the efficient progress of litigation."  *Visa U.S.A., Inc. v. First Data Corp.*, 241 F. Supp. 2d 1100, 1104 (N.D. Cal. 2003) (internal citations and quotations omitted).

Whether to disqualify counsel is a matter of the district court's discretion.  *Corns v. Laborers Int'l Union of N. Am.*, No. 09-CV-4403 YGR, 2014 WL 1319306, at *2 (N.D. Cal. Mar. 31, 2014) (citing *Gas–A–Tron of Ariz. v. Union Oil Co. of Calif.*, 534 F.2d 1322, 1325 (9th Cir. 1976)).  In considering a motion to disqualify, the district court must make findings supported by substantial evidence.  *See Visa U.S.A., Inc. v. First Data Corp.*, 241 F. Supp. 2d 1100, 1104 (N.D. Cal. 2003).  Because disqualification is strongly disfavored, the moving party "carries a heavy burden and must satisfy a high standard of proof." *IPVX Patent Holdings, Inc. v. 8x8, Inc.*, No. 413CV01707SBAKAW, 2013 WL 6700303, at *2 (N.D. Cal. Dec. 19, 2013).  Courts must also be cognizant of the "substantial hardship" and the "monetary and other costs of finding a replacement" on parties whose counsel is disqualified.  *Love*, 2013 WL 5273213, at *3 (citing *Gregori v. Bank of Am.*, 207 Cal.App.3d 291, 300 (1989)).  "Disqualification is only justified where the misconduct will have a 'continuing effect' on judicial proceedings *Baugh v. Garl*, 137 Cal. App. 4th 737, 744 (2006); *see also People ex rel. Dep't of Corps. v. SpeeDee Oil Change Sys., Inc*., 20 Cal. 4th 1135, 1145, 980 P.2d 371, 377 (1999) ("a disqualification motion may involve such considerations as a client's right to chosen counsel.").

ROPES & GRAY LLP OPPOSITION TO PLAINTIFF GUARDANT HEALTH, INC.'S MOTION TO DISQUALIFY ROPES & GRAY LLP AS COUNSEL FOR DEFENDANT FOUNDATION MEDICINE, INC.
Case No. 17-CV-03590-JS

13

IV.    ARGUMENT

      A.    **Guardant Was Not A Current Client When FMI Engaged Ropes To Represent It In This Case.**

Guardant retained Ropes for only two discrete matters, the ███ Matter and the ███ Matter.  By September 13, 2016, Ropes had completed all work for which it had been engaged for the ███ Matter, and by May 1, 2017, Ropes had been discharged from representation of Guardant in the ███ Matter.  Accordingly, by June 30, 2017, the date on which FMI retained Ropes to represent it in this case, Guardant was a former client.[7]

      1.    **Ropes' Representation Of Guardant In The ███ Matter Ended On September 13, 2016.**

By July 2016, the scope of Ropes' expected work for Guardant had been importantly narrowed:

> Thanks for your offer to adjust the invoice on the ███ matter.  I discussed your offer with [Guardant].  [Guardant] will accept the following arrangement:
>
> - $40K of the $87K invoice will go to settle your work to date on the ███ project.  The remained of about $47K will be allocated to projects in any combination as follows:
> - $10K flat rate for you to prepare for and attend an interview on the ███ case at the USPTO with [Wilson Sonsini].
> - $40K flat rate for an opinion of non-infringement/invalidity of the ███ patent.
> - Any amount left over (if you do not do one of these projects) to a future project.

This agreement clarifies the work Ropes was expected to perform on the ███ Matter, identifying only the Interview on September 13, 2016.  As discussed above, Guardant narrowed even that scope, disinviting Mr. Haley from attending the interview.

Guardant's motion assumes that the description of the scope of work contained in the Engagement Letter remained static throughout the engagement despite the subsequent events

---

[7] The notion, expressed in Guardant's brief, that Ropes dropped it like a "hot potato" to take on the representation of FMI in this case is meritless.  Ropes manifested its belief that Guardant was no longer a client long before FMI hired it in this case when, in late-May 2017, Mr. Haley reached out to his current clients to let them know of his planned move to Haley Guiliano but intentionally omitted Guardant based on his belief it was, at that time, a former client. [Haley Decl., ¶ 24].

ROPES & GRAY LLP OPPOSITION TO PLAINTIFF GUARDANT HEALTH, INC.'S MOTION TO DISQUALIFY ROPES & GRAY LLP AS COUNSEL FOR DEFENDANT FOUNDATION MEDICINE, INC.
Case No. 17-CV-03590-JS

1  that substantially limited that scope of work.  Retainer agreements are interpreted and enforced

2  like any other contract and are subject to the ordinary principles of contract interpretation; this

3  means they can be modified by the subsequent agreement of the parties, as was done here.

4  *See Banning Ranch Conservancy v. Superior Court*, 193 Cal. App. 4th 903, 912–13, 123 Cal.

5  Rptr. 3d 348, 354 (2011) (holding that retainers are interpreted and enforced like any other

6  contract).  It is the scope reflected in the July 21, 2016 agreement that should control.  *See* Cal.

7  Civ. Code § 1636 ("A contract in writing may be modified by a contract in writing."); *see also*

8  *Vella v. Hudgins*, 151 Cal. App. 3d 515, 519, 198 Cal. Rptr. 725, 727 (Ct. App. 1984)  ("It is

9  axiomatic that the parties to an agreement may modify it.").

10

11  **2.    Guardant Discharged Ropes From The ▮▮▮▮ Matter Effective May 1, 2017.**

12

13  After the September 13, 2016 Interview in the ▮▮▮Matter, Ropes performed a

14  negligible amount of work on the ▮▮▮ Matter.  Following Ropes' very public

15  announcement on March 7, 2017 that it intended to transfer its patent prosecution business to

16  another firm, Guardant issued an ultimatum concerning the ▮▮▮ Matter.  Indeed, on April

17  1, 2017 Guardant told Mr. Haley that if he did not complete that matter by May 1, 2017

18  Guardant would give the matter to other counsel.  Ropes did not complete the ▮▮▮ Matter

19  by May 1 and Ropes heard no more from Guardant.  Accordingly, Guardant discharged Ropes

20  from the ▮▮▮ Matter as of May 1, 2017.  *Fracasse v. Brent*, 6 Cal. 3d 784, 790, 494 P.2d 9,

21  13 (1972) ("It has long been recognized in this state that the client's power to discharge an

22  attorney, with or without cause, is absolute.").

23  Thus, by May 1, 2017, Ropes had no on-going work for Guardant and no reasonable

24  expectation of future work.  Indeed, even if Guardant had presented Ropes with an additional

25  project, Ropes could not have undertaken it due to its imminent exit from the patent rights

26  management business.  Ropes should be permitted to reasonably rely on the clear and

27  unambiguous Engagement Letter termination provision stating that the engagement will end

28

ROPES & GRAY LLP OPPOSITION TO PLAINTIFF GUARDANT HEALTH, INC.'S
MOTION TO DISQUALIFY ROPES & GRAY LLP AS COUNSEL FOR DEFENDANT
FOUNDATION MEDICINE, INC.
Case No. 17-CV-03590-JS

1    "when we have completed our work on the matters for which you have engaged us, or when

2    either of us informs the other that the representation has ended..." [8]

3        **B.      Guardant's "Reasonably Objective Expectation" Has No Bearing On
              Whether Guardant Was A Client Of Ropes On June 30, 2017, But Even If It
4             Did, Guardant Could Not Have Had Such An Expectation.**

5        The clear and unambiguous language of the Engagement Letter's automatic termination

6    provision obviates the need to assess whether Guardant possessed a "reasonably objective

7    expectation" that its attorney-client relationship continued through and beyond July 7, 2017.

8    "[C]ourts only look to a client's 'reasonable expectation' in situations in which there is no

9    contract." *LeapFrog Enterprises, Inc. v. Epik Learning, LLC*, No. 16-CV-04269-EDL, 2017

10   WL 2986604, at *7 (N.D. Cal. Feb. 23, 2017).  Guardant's reliance on *Gonzalez* and *Beardsley*

11   is misplaced as both cases are wholly inapposite to the facts at hand.  Both *Gonzalez* and

12   *Beardsley* address the tolling of the statute of limitations for purposes of a malpractice suit.  In

13   those cases, the main issue was the determination of the point in time at which an attorney has

14   ceased representation of a client for the purpose of tolling the statute of limitations on the

15   clients' malpractice claim, and thus neither case is applicable to the facts of this case.  *See*

16   *California Earthquake Auth. v. Metro. W. Sec., LLC*, 712 F. Supp. 2d 1124, 1130 (E.D. Cal.

17   2010) (declining to extend the reasoning of legal malpractice cases to the context of concurrent

18   representation conflicts).

19       But even assuming for argument's sake that the "reasonable expectation" standard were

20   applicable here, Guardant could not have had a reasonable objective belief, on June 30, 2017,

21   that it was still a Ropes client.  Months before that date, Guardant had: (1) indicated its

22   unhappiness with Ropes' billing rates and substantially narrowed by agreement the work it

23

24   [8] Guardant erroneously claims that statements of account Ropes sent Guardant in July and
     August 2017 evidence a continuing attorney-client relationship.  Guardant did not pay Ropes the
25   amounts it agreed to pay in the July 21 email if Ropes had performed certain tasks, because
     Ropes did not perform those tasks, and Ropes never demanded additional work from Guardant
26   to ensure that Ropes would be paid the $47,000 balance outstanding from the June 2016 invoice.
     [Haley Decl., ¶ 14-15].   These statements of account are not demands; they are mere reminders
27   that the $47,000 balance was never satisfied by any new assignments from Guardant and were
     sent, despite Guardant's former client status, because the internal accounting process by which
28   unpaid receivables are written off had not yet been completed.  [Reiser Decl. ¶ 5].

ROPES & GRAY LLP OPPOSITION TO PLAINTIFF GUARDANT HEALTH, INC.'S
MOTION TO DISQUALIFY ROPES & GRAY LLP AS COUNSEL FOR DEFENDANT
FOUNDATION MEDICINE, INC.
Case No. 17-CV-03590-JS

16

1  expected Ropes to perform in the ▮▮▮▮ Matter (which work Ropes had completed); and (2)

2  discharged Ropes from the ▮▮▮▮ Matter.  And Ropes had nearly completed the process of

3  disengaging entirely from the patent prosecution practice.  Ropes had no other responsibilities to

4  Guardant and was no longer in a position to provide any services of the kind Guardant had

5  originally sought from Ropes.  Particularly given the Engagement Letter's termination

6  provision, Guardant could not have reasonably believed on June 30 that either the ▮▮▮ or

7  ▮▮▮▮ Matters formed the basis of an on-going attorney-client relationship.[9]

8          **C.**     **There Is No Substantial Relationship Between Ropes' Patent Work For Guardant And This False Advertising Case Because Ropes Did Not Receive**

9               **Any "Material" Guardant Information.**

10         Ropes received no information from Guardant in performing the patent work that is

11  material to this false advertising case.  The existence of a substantial relationship turns on the

12  similarities between two matters' factual situations, legal questions posed, and the nature and

13  extent of the attorney's involvement in the former matter. *Morrison Knudsen Corp. v. Hancock,*

14  *Rothert & Bunshoft,* 69 Cal.App. 4th 223, 234, citing *H.F. Ahmanson & Co. v. Salomon*

15  *Brothers, Inc.,* 229 Cal.App.3d 1445, 1455 (1991).  Contrary to Guardant's suggestion, the

16  conflict rule applicable to former clients is not designed to ensure that the duty of loyalty has

17  been upheld.  Rather, it is designed to further compliance with the duty of confidentiality.  Thus,

18  the moving party must show that, based on the similarities between the two matters, it is likely

19  that the confidential information gained from the prior representation is *material* to the current

20  employment. *Morrison*, 69 Cal.App.4th at 234 (citing Rule 3-310(E)).  Information is "material"

21  if it is "found to be directly at issue in, or have some critical importance to, the second

22

23  [9] Guardant's argument that Ropes withdrew from its representation of Guardant at a time when

24  doing so would prejudice Guardant's interests, in violation of the California ethics rule governing attorney withdrawal, is entirely without merit.  For the reasons stated herein, Ropes

25  did not withdraw from representing Guardant but rather completed its work in the ▮▮▮▮ Matter and was discharged from the ▮▮▮▮ Matter.  Thereafter, Ropes exited the prosecution

26  practice entirely.  Surely, Guardant is not contending that Ropes was obliged to maintain that practice simply because of the firm's short history with Guardant.  In any event, Guardant's

27  interests have not been prejudiced because it still has two law firms representing it in the ▮▮▮▮ Matter, Wilson Sonsini and Mr. Storella's firm, and as Guardant has explained in its opening

28  brief, there has been no recent activity in that matter, which affords it an ample opportunity to retain additional counsel should it so desire.

ROPES & GRAY LLP OPPOSITION TO PLAINTIFF GUARDANT HEALTH, INC.'S
MOTION TO DISQUALIFY ROPES & GRAY LLP AS COUNSEL FOR DEFENDANT
FOUNDATION MEDICINE, INC.
Case No. 17-CV-03590-JS

17

1   representation." *Beltran v. Avon Prods., Inc*., 867 F. Supp. 2d 1068, 1077 (C.D. Cal. 2012);

2   *Farris v. Fireman's Fund Ins. Co.*, 119 Cal. App. 4th 671, 680, 14 Cal. Rptr. 3d 618, 623 (2004)

3   ("only when such information will be directly in issue or of unusual value in the subsequent

4   matter will it be independently relevant in assessing a substantial relationship") (internal

5   quotations omitted).  The burden to demonstrate a substantial relationship lies entirely with

6   Guardant.  *See In re Charlisse C.*, 45 Cal.4th 145, 166 n. 11, 84 Cal.Rptr.3d 597, 194 P.3d 330

7   (2008) ("It remains the former client's burden to show the fact of the former representation and

8   the existence of a substantial relationship between the former and current representations").

9          To demonstrate a substantial relationship, Guardant primarily focuses on the fact that the

10   Guardant360 product is implicated in both matters.  But that mere fact is not enough to establish

11   the materiality of information gained during the former representation.  The former client test is

12   more rigorous than that.

13          In the ████ Matter, Ropes worked with Guardant's outside counsel to develop a patent

14   claim strategy, prepare expert reports, and amend patent claims in order to demonstrate to the

15   Examiner that Guardant's technology was different from the prior art.  Whether or how

16   Guardant's claimed technology is different from the prior art is not even remotely at issue in this

17   case.  The ████ Matter concerned whether Guardant was free to operate in light of a patent

18   owned by ████████████ (and on which Ropes never significant work).

19          The advertising claims at issue in this case concern how accurate the parties' assays are,

20   as measured and assessed in different ways.  The claims do not concern, for example, how the

21   assays were developed or manufactured, or the precise mechanics of how the assays actually

22   identify genetic mutations—that is, the specific biochemical processes and mathematical

23   algorithms that enable the assays to spot mutations which constitute each party's intellectual

24   property.  In fact, those processes and algorithms are irrelevant to this case, and the precise

25   mechanics of the parties' respective products are, for purposes of this case, black boxes.  What

26   matters in this case is how the parties advertise the results of using those black boxes, and

27   whether those advertising claims are truthful and not misleading when compared to data from

28   analytical and clinical validation studies of those assays.

1    By way of illustration, consider the first example of FMI's allegedly false advertising set

2    forth in Guardant's Complaint.  That advertising claim alleges that, based on the results of

3    certain studies, Guardant's product detects cancer-related genomic alterations in only 58% of

4    patients whereas FMI's product detects such alterations in up to 98% of patients.  Guardant

5    contends that statement is false, and whether that statement is truthful and non-misleading

6    depends on whether the data in those studies supports the claim, or does not.  The specific

7    biochemical processes and mathematical algorithms that each party's assays uses to analyze a

8    patient sample to identify any genomic alterations are simply not material to this question.

9    Lacking any concrete facts establishing that Ropes possesses Guardant confidential

10   information material to this false advertising case, Guardant improperly relies on vague and

11   general assertions concerning the relevance of the technology involved in the ███████ and

12   ███████ Matters to which Ropes was allegedly privy.  For example, Guardant asserts that

13   Ropes received confidential information "regarding key elements of Guardant 360 technology"

14   and "the efficacy of that technology is squarely at issue" in this case.  Guardant's brief is devoid

15   of any factual support explaining exactly *how any* of the information about product elements is

16   material to a dispute about representations made concerning the *efficacy* and *reliability* of

17   Guardant360®.  Based on such a deficient factual showing "the court should not allow its

18   imagination to run free with a view to hypothesizing conceivable but unlikely situations in

19   which confidential information 'might' have been disclosed which would be relevant to the

20   present suit." *Glaxo Grp. Ltd. v. Genentech, Inc.*, No. SA 10-CV-2764-MRP, 2010 WL

21   11074653, at *3 (C.D. Cal. June 15, 2010).

22   As its primary source of evidence of a substantial relationship Guardant relies on a slide

23   deck purportedly provided to Mr. Haley in November 2016 entitled "███████████

24   ███████████." [10]  This slide deck, prepared by Wilson Sonsini, seems to contain,

25   according to Guardant, ███████████████████████████████████████

26   ███████████████████████████████.  While the slide

---

[10] Mr. Haley does not recall receiving the slide deck and believes that, if he did review it, any
review would have been so cursory that he would not have charged any time for that work.
[Haley Decl., ¶ 21]

ROPES & GRAY LLP OPPOSITION TO PLAINTIFF GUARDANT HEALTH, INC.'S
MOTION TO DISQUALIFY ROPES & GRAY LLP AS COUNSEL FOR DEFENDANT
FOUNDATION MEDICINE, INC.
Case No. 17-CV-03590-JS

1  deck could very well be important to Guardant's patent strategy or even an infringement action

2  brought against Guardant, it is not material to a false advertising case in which Guardant's

3  intellectual property is not at issue.  The slide deck contains no information showing how

4  Guardant's product performs, either in a vacuum or as against competitors' products, and it

5  contains no information about the methodology used by Guardant to measure its product's

6  performance or how Guardant validated any performance results.

7        Confronted with the dearth of factual and legal similarities between the two matters,

8  Guardant, not surprisingly, is unable to provide the Court with any example of confidential

9  information Ropes received or likely would have received in the ███ and ███████ Matters

10  that would be material to this false advertising matter.  As such, Guardant's position is not

11  supported by the "substantial evidence" needed for this Court to make the drastic decision to

12  disqualify Ropes as FMI's chosen counsel and the Court should deny Guardant's motion to

13  disqualify.[11]  *See Visa U.S.A., Inc. v. First Data Corp.*, 241 F. Supp. 2d 1100, 1104 (N.D. Cal.

14  2003).

### D.   Guardant's Disqualification Motion Is Tactically Based And, If Granted, Would Severely Prejudice FMI's Interests.

17        For the reasons set forth above, no concurrent or successive conflict prevents Ropes

18  from representing FMI in this case.  Guardant brought this motion purely for tactical purposes

19  designed to frustrate FMI's ability to defend this case with the counsel of its choice.  Nothing

20  speaks to the tactical nature of this motion more clearly than the fact that Guardant waited more

21  than two months after Ropes had disclosed its retention by FMI to Guardant's counsel to file it.

22  And rather than letting the disqualification motion be resolved before getting to the merits of its

23  claims, Guardant filed on the same day its motion for a preliminary injunction and has gone

24  forward with intensive discovery on that motion.  This ensures that FMI must have to both

---

[11] Ropes and FMI reserve their rights to contest any claim Guardant may file to recoup its attorneys' fees incurred in bringing this disqualification motion.  Such fees are awarded only in cases where the party defending a disqualification motion does so in bad faith, not where, as here, the defending parties have valid arguments as to why no conflicts exist.  *See LeapFrog Enterprises,* 2017 WL 2986604, at *12 (N.D. Cal. Feb. 23, 2017) (declining to award attorney's fees for a motion to disqualify where "the conflict was not clear cut.").

ROPES & GRAY LLP OPPOSITION TO PLAINTIFF GUARDANT HEALTH, INC.'S
MOTION TO DISQUALIFY ROPES & GRAY LLP AS COUNSEL FOR DEFENDANT
FOUNDATION MEDICINE, INC.
Case No. 17-CV-03590-JS

20

1    defend its choice of counsel and engage in an important substantive motion for substantial relief.

2    The only reasonable conclusion to be drawn from this seemingly inconsistent behavior is that

3    Guardant does not truly believe that it will be prejudiced by Ropes' continued representation of

4    FMI in this case, and it calls into serious question Guardant's representation to the Court in its

5    September 20, 2017 letter that "resolution of the disqualification issue [by moving up the

6    hearing date] should permit Guardant to engage in discovery on the Motion for Preliminary

7    Injunction without concern that its own lawyers may use its privileged and confidential

8    information to advance the position of its adversary."

9            But Guardant's decisions certainly will result in prejudice to FMI.  It puts FMI in the

10   untenable situation of having to engage in significant discovery and briefing on the preliminary

11   injunction motion and to be in the middle of that discovery and briefing when its counsel of

12   choice, Ropes, could be removed before these tasks have been completed.  This would force

13   FMI to retain new counsel, get them up to speed, and have them re-engage in discovery

14   resulting in significant prejudice to FMI.  Guardant created this situation by its own actions and

15   should not be permitted to profit by them, even if the Court were to find that there was a

16   successive conflict.  *Kelly v. Roker*, No. C 11-05822 JSW, 2012 WL 851558, at *3 (N.D. Cal.

17   Mar. 13, 2012) ("[I]t is not in the interests of justice to make the 'substantial relationship' rule

18   *so unyielding* as to permit the former client to inexcusably postpone objections without

19   penalty.") (quoting *River W., Inc. v. Nickel*, 188 Cal. App. 3d 1297, 1309, 234 Cal. Rptr. 33, 41

20   (Ct. App. 1987)) (emphasis in original).

21           FMI chose Ropes as its counsel in this matter based on Mr. Brody's significant expertise

22   in false advertising cases in the life sciences space.  To date, Mr. Brody and his team, none of

23   whom did any work for Guardant, have expended over a thousand hours on the case.

24   Disqualifying Ropes after all this work has been done, and in the midst of intensive litigation of

25   the preliminary injunction motion, would result in an unfair punishment of the client, FMI, for

26   what would have been solely the actions of its law firm, Ropes.  Given that Ropes has an ethical

27   wall in place protecting Guardant's information, the drastic remedy of disqualification should be

28   avoided in this case.

ROPES & GRAY LLP OPPOSITION TO PLAINTIFF GUARDANT HEALTH, INC.'S
MOTION TO DISQUALIFY ROPES & GRAY LLP AS COUNSEL FOR DEFENDANT
FOUNDATION MEDICINE, INC.

Case No. 17-CV-03590-JS

21

## V.        CONCLUSION

For these reasons, FMI and Ropes respectfully request that the Court deny Guardant's motion to disqualify Ropes as FMI's counsel in this matter.


Respectfully submitted,

September 29, 2017                          By  /s/ Eric R. Hubbard

Eric R. Hubbard (*pro hac vice*)
Eric.Hubbard@ropesgray.com

Gregory M. Reiser (*pro hac vice*)
Gregory.Reiser@ropesgray.com

Joseph B. Palmieri
Joseph.palmieri@ropesgray.com

Attorneys for ROPES & GRAY LLP and
Defendant FOUNDATION MEDICINE, INC.

ROPES & GRAY LLP OPPOSITION TO PLAINTIFF GUARDANT HEALTH, INC.'S
MOTION TO DISQUALIFY ROPES & GRAY LLP AS COUNSEL FOR DEFENDANT
FOUNDATION MEDICINE, INC.
Case No. 17-CV-03590-JS

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**CERTIFICATE OF SERVICE**

      I hereby certify that on September 29, 2017, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel of record.

                                           */s/* Eric R. Hubbard

ROPES & GRAY LLP OPPOSITION TO PLAINTIFF GUARDANT HEALTH, INC.'S MOTION TO DISQUALIFY ROPES & GRAY LLP AS COUNSEL FOR DEFENDANT FOUNDATION MEDICINE, INC.
Case No. 17-CV-03590-JS

23