UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GUARDANT HEALTH, INC.,<br><br>　　　　　Plaintiff,<br><br>　v.<br><br>FOUNDATION MEDICINE, INC.,<br><br>　　　　　Defendant. | Case No.17-cv-03590-JSC<br><br>**ORDER RE: PLAINTIFF'S MOTION TO DISQUALIFY DEFENSE COUNSEL**<br><br>Re: Dkt. No. 33 |

Plaintiff Guardant Health, Inc. ("Guardant") filed this action against its competitor in the liquid biopsy assay market, Foundation Medicine, Inc. ("FMI") alleging that FMI's marketing and advertising practices violate state and federal law. Shortly after Guardant brought suit, Ropes & Gray entered an appearance on FMI's behalf. Guardant's motion to disqualify Ropes & Gray is now pending before the Court.[1] (Dkt. No. 33.) Having considered the parties' briefs and having had the benefit of oral argument on October 26, 2017, the Court GRANTS Guardant's motion. Guardant was a client of Ropes & Gray at the time Ropes & Gray entered an appearance on FMI's behalf; Ropes & Gray therefore breached its duty of loyalty to Guardant through concurrent representation of a party whose interests are adverse to Guardant's.

//

//

---

[1] Both parties have consented to the jurisdiction of a magistrate judge pursuant to 28 U.S.C. § 636(c). (Dkt. Nos. 10 & 22.)

**BACKGROUND**

Guardant is a biotechnology company which specializes in DNA sequencing and cancer diagnostics. (Complaint ¶ 5.) It was the first company to develop and commercialize a liquid biopsy assay to identify genomic biomarkers for advanced solid tumors using "cell-free circulating tumor DNA" or "ctDNA" from non-invasive blood draws. (*Id.*) The Guardant360 liquid biopsy cancer assay helps identify targeted treatment options based on changes in cancer cells. (*Id.* at ¶ 6.)

In connection with this work, in 2013 Guardant acquired U.S. Patent 7,700,286 ("'286 Patent") which is directed to "methods for the diagnosis and monitoring the progression of cancer by measuring gene amplification in a bodily fluid, such a blood, colloquially referred to as "liquid biopsy." (Dkt. No. 31-8, Declaration of John Storella, ¶ 2.) Later that same year, Guardant also filed an application for a continuation reissue patent based on the '286 Patent, Application No. 14/039,168 ("'168 Application" or the "Stroun Patent"). Wilson Sonsini Goodrich & Rosati ("Wilson Sonsini") represented Guardant for purposes of this application and prosecution. (Dkt. No. 31-7, Declaration of William M. Smith, ¶ 3.) The United States Patent & Trademark Office (PTO) issued a final rejection of this application in April 2015 which was followed by an advisory action in July 2015 informing Guardant that it had not overcome the reasons for rejection. (Dkt. No. 31-8 ¶ 4.)

Around that time, Guardant's outside intellectual property counsel, John R. Storella, of John Storella, P.C., recommended that Guardant retain James Haley, Senior Counsel at Ropes & Gray, to represent Guardant with respect to patent prosecution activity and to prepare a Request for Continued Examination (RCE) of the '168 Application. (*Id.* ¶ 5.) Mr. Storella contacted Mr. Haley in August 2015 and Mr. Haley agreed to the representation on behalf of Ropes & Gray with Mr. Haley providing an estimate of $30,000-$40,000 for the work. (*Id.* ¶ 6.) On October 2, 2015, Guardant and Ropes & Gray executed an engagement letter. (Dkt. No. 38-1 at 9 (Ex. A).[2]) The engagement letter states that Ropes & Gray agrees to represent Guardant "in connection with the prosecution of U.S. patent application 14/039,168 (a reissue of U.S. patent 7, 700,286) related to

---

[2] Record citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of the documents.

methods of diagnosis or monitoring cancer by measuring gene amplification, including a potential appeal to the Patent Trial and Appeal Board on various 101 issues and if unsuccessful, an appeal to the Federal Circuit." (*Id*.) According to the agreement, the representation "will end when we have completed our work on the matters for which you have engaged us, or when either of us informs the other that the representation has ended (including by transmittal of our final bill on those matters)." (*Id*. at 13.)

Ropes & Gray thereafter worked with the Wilson Sonsini team and Mr. Storella on Guardant's patent prosecution strategy. (Dkt. No. 31-8 at ¶ 9.) In particular, Ropes & Gray helped prepare the RCE and developed expert testimony to support the conclusion that the claims in the patent were not obvious. (*Id*. ¶¶ 9-10; Dkt. No. 55-9, Declaration of James F. Haley, ¶ 6.) Mr. Haley, on behalf of Ropes & Gray, recruited an expert to prepare a declaration and he assisted with drafting and editing the declaration of another expert. (Dkt. No. 31-8 ¶ 10.) In late May 2016, Guardant filed the RCE which relied considerably on the declarations of the two experts. (*Id.* ¶ 12.)

That same month, FMI sued Guardant for patent infringement in the Eastern District of Texas. (*Id*. at ¶ 11.) Mr. Haley brought the suit to Guardant's attention and sought to discuss whether Ropes & Gray could defend Guardant in the patent infringement action. (*Id*.; Dkt. No. 31-8 at 17 (Ex. B).) Mr. Haley initially contacted Guardant regarding representing it, but when a conflicts check indicated that FMI was a current client of Ropes & Gray he elected not to pursue it further. (Dkt. No. 55-9 ¶ 10.) Regardless, Guardant ultimately elected to retain other litigation counsel. (Dkt. No. 31-8 ¶ 11.)

Ropes & Gray submitted its first bill to Guardant in February 2016 for approximately $20,000 which was followed by a second bill in June 2016 for $87,000. (*Id*. ¶ 12.) Guardant paid the February invoice, but objected to the June invoice. (*Id*.) The fee dispute was resolved with Guardant agreeing to pay $40,000 of the June bill and allocating the remaining $47,000 for subsequent work including:
- $10,000 flat rate for [Mr. Haley/Ropes & Gray] to prepare for and attend an interview on the Stroun patent at the USPTO with WSGR.
- $40k flat rate for an opinion of non-infringement/invalidity

3

- of the [third-party] patent.
- Any amount left over (if you do not do one of these projects) to a future project.

(Dkt. No. 31-8 at 22 (Ex. C).)

Guardant was notified in mid-August that its in-person interview at the USPTO on the Stroun patent would be held on September 13, 2016. (Dkt. No. 38-1 ¶ 13.) Two Wilson Sonsini attorneys attended the interview in person, another Wilson Sonsini attorney, Mr. Storella, and one of the experts participated by phone. (*Id*.) Mr. Haley did not attend the in-person interview— Guardant contends this was because Guardant wanted him to focus on the third-party patent, but Mr. Haley assumed it was because Guardant did not want to overwhelm the examiner by having too many people present. (*Id*. ¶ 14; Dkt. No. 55-9 ¶ 17.) However, Mr. Haley was copied on a summary prepared by one of the Wilson Sonsini attorneys who attended, which also stated that Wilson Sonsini attorneys would draft amended claims to submit for Mr. Storella for review. ((Dkt. No. 55-9 ¶ 18.) Guardant is still awaiting a decision from the PTO on the RCE for the Stroun patent. (Dkt. No. 38-1 ¶ 13.)

With respect to the third-party opinion letter, in November 2016, Mr. Strorella sent Mr. Haley a slide deck prepared by Wilson Sonsini which contained a confidential description of aspects of Guardant's technology and review of other parties' patent filings. (*Id*. at ¶ 14.) Mr. Haley does not recall seeing this document; he may have sent it to his Technical Advisor, but he is not sure. (Dkt. No. 55-9 ¶ 21.) Although Mr. Storella contacted Mr. Haley repeatedly between January 2017 and April 2017 regarding the promised third-party patent opinion letter, Mr. Haley repeatedly reported that he had not had time to work on it yet, but he expected to soon. (*Id*. at ¶ 22; Dkt. No. 38-1 ¶ 14.) On April 1, 2017, Mr. Storella contacted Mr. Haley seeking an update and stating "Please confirm that you can provide Guardant with an opinion letter by May 1. If not, I'll have to find another firm to work on it." (Dkt. No. 31-8 at 28 (Ex. E).) Mr. Haley never responded to the email. (Dkt. No. 55-9 ¶ 23.)

The following month, Mr. Haley decided to leave Ropes & Gray to form his own law firm. (*Id*. ¶ 24.) Although he reached out to several clients to notify them of this decision, he did not contact Guardant or Mr. Storella "because [he] did not consider Guardant to be a current client of

Ropes at that time." (*Id.*) Two months prior to Mr. Haley's decision—and one month prior to the April 11email from Mr. Storella to Mr. Haley—Ropes & Gray "announced its decision to transfer patent prosecution business to another firm." (Dkt. No. 55-8, Declaration of Gregory M. Reiser, ¶ 6.) Beyond public announcements to this effect, there is no evidence that Guardant was made aware of this decision. (*Id.* ¶ 7.)

On June 22, 2017, Guardant filed the underlying action against FMI. (Dkt. No. 1.) Six days later, Ropes & Gray issued a press release stating that Ropes & Gray was leaving the patent prosecution business and that Mr. Haley was leaving to start his own firm. (Dkt. No. 55-8 ¶ 8.) Although there were news articles to this effect, there is no evidence regarding how this information was communicated to clients or Guardant. (Dkt. No. 55-8 ¶ 9.)

On July 14, 2017, Ropes & Gray entered an appearance in this action on behalf of FMI. (Dkt. Nos. 11 & 14.) Two weeks later, William Smith, Senior Vice President of Intellectual Property at Guardant, sent Mr. Haley a letter requesting that Ropes & Gray withdraw from representing FMI. (Dkt. No. 31-7 ¶ 12; at 17 (Ex. B).) Five days later, Mr. Haley responded to Mr. Smith stating that it was his last day at Ropes & Gray, but that he had reviewed the matter and determined that there was no conflict because their representation of Guardant had ended before they began representing FMI and Ropes & Gray put an ethical wall up at the commencement of its representation of FMI. (*Id.* ¶ 13.) Mr. Haley then directed Mr. Smith to send any further correspondence to Peter Brody, FMI's counsel in this action. (*Id.*)

Less than a week later, Mr. Smith sent a letter to Mr. Brody regarding his concerns over Ropes & Gray's representation given its concurrent representation of Guardant. (Dkt. No. 31-7 ¶ 14.) Mr. Smith also expressed his concern regarding the confidential information Guardant had provided to Mr. Haley regarding Guardant 360's efficacy. (*Id.*; Dkt. No. 31-7 at 23 (Ex. D).). Six days later, Mr. Brody responded that Ropes & Gray no longer provides patent prosecution services and that he had reviewed the file and there was no conflict with Ropes & Gray's representation of FMI. (*Id.* at 27 (Ex. E).) Mr. Brody also stated that Ropes & Gray did not seek payment of an outstanding balance for work performed after the RCE. (*Id.* at 28.) Guardant nonetheless received statements of accounts on July 5 and August 1, 2017 which reflect a balance due of $47,722.34.

(DKt. No. 31-7 ¶ 16; *id*. at 31 (Exs. F & G).)

Guardant decided to retain conflicts counsel shortly thereafter and on August 23, 2017, Guardant's conflict counsel and Ropes & Gray's conflict counsel met and conferred regarding Ropes & Gray's withdrawal. (Dkt. No. 31-7 ¶¶ 17-18.) The parties were unable to reach an agreement. On September 12, 2017, Guardant filed the underlying motion to disqualify Ropes & Gray as well as a motion for preliminary injunction. (Dkt. Nos. 31 & 32.) The parties subsequently stipulated to adjust the briefing schedule on the preliminary injunction such that the motion to disqualify could be resolved prior to further briefing on the preliminary injunction. (Dkt. No. 52.)

**DISCUSSION**

**A. Legal Standard**

"[D]isqualification motions involve a conflict between the clients' right to counsel of their choice and the need to maintain ethical standards of professional responsibility. The paramount concern must be to preserve public trust in the scrupulous administration of justice and the integrity of the bar. The important right to counsel of one's choice must yield to ethical considerations that affect the fundamental principles of our judicial process." *People ex rel. Dep't of Corps. v. SpeeDee Oil Change Sys., Inc.*, 20 Cal. 4th 1135, 1145 (1999) (internal citation and quotation marks omitted). Whether to disqualify counsel is a decision vested in the discretion of the district court. *See Gas–A–Tron of Ariz. v. Union Oil Co. of Calif.*, 534 F.2d 1322, 1325 (9th Cir. 1976).

Every attorney before this Court must "comply with the standards of professional conduct required of the members of the State Bar of California." N.D. Cal. Civ. Local Rule 11–4(a)(1). The Court thus applies California law in this matter. *See Certain Underwriters at Lloyd's, London v. Argonaut Ins. Co.*, 264 F.Supp.2d 914, 918 (N.D. Cal. 2003). "California courts have identified two separate categories in which actual or potential conflicts of interest arise in a counsel's representation of multiple clients." *M'Guinness v. Johnson*, 243 Cal. App. 4th 602, 613 (2015). First, simultaneous or concurrent representation of clients with opposing interests results in a conflict of interest in which "[t]he primary value at stake ... is the attorney's duty—and the client's

6

legitimate expectation—of *loyalty*." *Id.* (internal citation and quotation marks omitted, emphasis in original). Second, successive representation of multiple clients which may result in a conflict of interest if the former client demonstrates "a *substantial relationship* between the subjects of the antecedent and current representation." *Id*. at 614 (internal citation and quotation marks omitted, emphasis in original). With successive representation, "the courts have recognized that the chief fiduciary value jeopardized is that of client *confidentiality*." *Flatt v. Superior Court*, 9 Cal. 4th 275, 283 (1994) (emphasis in original)

### B. Ropes & Gray Concurrently Represented Guardant and FMI

California Rule of Professional Conduct 3-310(c)(3) governs concurrent representation:

> A member shall not, without the informed written consent of each client... [r]epresent a client in a matter and at the same time in a separate matter accept as a client a person or entity whose interest in the first matter is adverse to the client in the first matter.

Under this rule concurrent representation of clients whose interests are adverse is prohibited unless both clients give their informed consent. The prohibition applies even if the two disputes are unrelated. *See Flatt*, 9 Cal. 4th at 284 (" Even though the simultaneous representations may have nothing in common, and there is no risk that confidences to which counsel is a party in the one case have any relation to the other matter, disqualification may nevertheless be required."). "Indeed, in all but a few instances, the rule of disqualification in simultaneous representation cases is a per se or 'automatic' one." *Id*. "This per se rule is appropriate because a client who learns that his or her lawyer is also representing a litigation adversary, even with respect to a matter wholly unrelated to the one for which counsel was retained, cannot long be expected to sustain the level of confidence and trust in counsel that is one of the foundations of the professional relationship." *M'Guinness*, 243 Cal. App. 4th at 614–15 (internal citation and quotation marks omitted).

Guardant insists that Ropes & Gray should be disqualified from representing FMI here because Ropes & Gray has been Guardant's counsel for patent prosecution work since 2015. Ropes & Gray responds that Guardant was no longer a client as of May 1, 2017 because the July 21, 2016 email resolving the fee dispute limited the scope of its representation, Ropes & Gray

"completed" all work for which it had been engaged on the Stroun matter by September 13, 2016, and it was "discharged" from representation of Guardant in the third-party patent opinion letter matter on May 1, 2017 when it did not respond to Mr. Storella's email. The Court is not persuaded.

### 1. Ropes & Gray did not Complete all of the Work for Which it was Engaged

The retainer agreement states that Ropes & Gray will represent Guardant "in connection with the prosecution of U.S. patent application" "related to methods of diagnosis or monitoring cancer by measuring gene amplification, *including a potential appeal to the Patent Trial and Appeal Board on various 101 issues and if unsuccessful, an appeal to the Federal Circuit*." (Dkt. No. 31-7 at 9 (emphasis added).) Pursuant to this agreement, Ropes & Gray was involved in the retention of experts, editing of expert declarations, and developing and drafting Guardant's patentability arguments in connection with the Stroun Patent RCE. Ropes & Gray participated in preparations for the examiner interview before the PTO on September 13, 2016, but Mr. Haley did not attend the interview because he believed "the prosecution strategy was in place and Guardant did not want to overwhelm the Examiner with too many people." (Dkt. No. 55-9 ¶ 17.) Following the interview, although Mr. Haley was copied on a summary prepared by one of the Wilson Sonsini attorneys who attended, the summary also stated that Wilson Sonsini would draft amended claims to submit for Mr. Storella for review. (*Id*. ¶ 18.)

Ropes & Gray insists that under these circumstances its representation of Guardant on the Stroun matter was completed as of the RCE interview. The Court finds otherwise. The engagement letter states that Ropes & Gray's representation on the Stroun matter includes appeal to the Patent Trial and Appeal Board, and if necessary, an appeal to the Federal Circuit. (Dkt. No. 3108 at 9.) Both are still possible; thus, Ropes & Gray has not completed its engagement and therefore represented Guardant when it made its appearance in this action on FMI's behalf. *See Gurkewitz v. Haberman*, 137 Cal.App.3d 328, 333 (1982) ("So long as there are unsettled matters tangential to a case, and the attorney assists the client with these matters, he is acting as his representative.").

Ropes & Gray nonetheless urges that the July 21, 2016 email resolving the fee dispute

modified the engagement letter such that the only work left to be completed on the Stroun Patent was the September 2016 PTO interview. As that interview had long happened by the time Ropes & Gray appeared in this action, Ropes & Gray contends there was no concurrent representation. The Court finds, however, that the email did not modify the engagement letter. First, the email discusses resolving a dispute as to a fee invoice and makes no mention of the engagement letter. Second, the email identified particular work to be performed for a particular price—the $47,000 in dispute—and, again, does not suggest that this is the only work Ropes & Gray would perform. Third, Mr. Haley does not claim to have had any oral discussions with Guardant regarding modifying the engagement letter. Thus, Guardant's engagement of Ropes & Gray to assist with potential appeals in connection with the Stroun patent remained after the resolution of the fee dispute.

In any event, even if the engagement agreement was modified by the parties' July 21, 2016 fee dispute email, the Court finds that Ropes & Gray had not completed the work outlined in the email either. The July 21, 2016 email established three allocations for the outstanding $47,000: (1) $10,000 to prepare for and attend an interview on the Stroun patent at the USPTO with Wilson Sonsini, (2) $40,000 for an opinion of non-infringement/invalidity of the third-party patent, and (3) any amount left over (if one of these projects is not completed) to a future project. (Dkt. No. 31-8 at 22 (Ex. C).) The full $47,000 remains because Ropes & Gray has not performed any work for Guardant since September 2016. While as of its appearance in this action Ropes & Gray could no longer assist with the interview, it could still provide the third party opinion letter and a special project as outlined in the email. Indeed, that Ropes & Gray continued to send accounting statements to Guardant reflecting a balance due of $47,000 at least through August 2017 confirms that there was outstanding work to be performed pursuant to the attorney-client relationship. *See M'Guinness*, 243 Cal. App. 4th at 617–18 ("ambiguities [] in the engagement agreement, [] are to be resolved "in favor of the client and against the attorney.").

**2.    Guardant did not Discharge Ropes & Gray**

Recognizing that it has not prepared the expressly contemplated third party opinion letter, Ropes & Gray argues that Guardant discharged Ropes & Gray when Mr. Haley ignored Mr.

9

1  Storella's email asking Mr. Haley to "confirm that you can provide Guardant with an opinion

2  letter by May 1. If not, I'll have to find another firm to work on it." (Dkt. No. 31-8 at 28.) This

3  argument, too, fails to persuade.

4  First, the engagement letter provides that to terminate the attorney-client relationship,

5  Ropes & Gray had to inform Guardant that the representation had ended or Guardant had to

6  inform Ropes & Gray that it was terminating the engagement. (Dkt. No. engagement letter.) It is

7  undisputed that Ropes & Gray never so advised Guardant before it appeared in this lawsuit. And

8  Guardant never so advised Ropes & Gray. Thus, under the plain terms of the engagement letter,

9  Guardant's engagement of Ropes & Gray had not terminated. *See Mindscape, Inc. v. Media*

10  *Depot, Inc.*, 973 F.Supp. 1130, 1133 (N.D. Cal. 1997) (law firm disqualified in copyright

11  infringement action due to concurrent representation because, among other things, firm never

12  advised client "it considered the representation terminated"). Instead, "the relationship between

13  the [the law firm] and [the client] extended into 201[7] when this litigation commenced."

14  *M'Guinness*, 243 Cal. App. 4th at 618.

15  Second, the Court rejects Ropes & Gray's argument that because Mr. Storella expressed

16  frustration at how long it was taking Mr. Haley to complete a promised task and therefore

17  threatened to find another firm if Ropes & Gray did not complete the project by May 1, Ropes &

18  Gray could just let the date pass and then assume that it had been terminated as counsel. An

19  attorney cannot just ignore his or her client and then assume that the client terminated the

20  relationship; this is grounds for referral for disciplinary action, not grounds for deeming the

21  attorney-client relationship over. If Ropes & Gray intended to terminate its representation, it

22  needed to affirmatively withdraw from representation by sending a disengagement letter, final bill,

23  returning Guardant's file or more informally through a follow-up email or phone call.[3] Absent it

---

[3] Ropes & Gray's argument for de facto termination based on the fact that it no longer has a patent prosecution practice and Mr. Haley has left the firm is unavailing. Surely, Ropes & Gray made arrangements for its patent prosecution clients either to join Mr. Haley's new firm or to find new counsel. That it seems to have forgotten about Guardant when doing so does not allow it to now make an inevitability argument with respect to termination of the attorney-client relationship. Moreover, Mr. Haley was *still with Ropes & Gray* at the time it entered an appearance on behalf of FMI in this action.

doing so, its representation continued. *See M'Guinness*, 243 Cal. App. 4th at 618 (citing 1 Mallen & Rhodes, Legal Malpractice (2015 ed.) Preventing and Mitigating Legal Malpractice Claims—General Principles, § 2:45, p. 116 [recommending sending client an "end-of-engagement letter" to "prevent confusion about whether the law firm's representation has ended"].

Third, even if Ropes & Gray's failure to respond to Mr. Storella's April 2017 email could be deemed to have terminated its obligation to prepare the third party opinion letter, under the written engagement letter it was still obligated to assist with appeals in connection with the Stroun patent.

### 3. Ropes & Gray's Concurrent Representation Violates the Duty of Loyalty

"The most egregious conflict of interest is representation of clients whose interests are directly adverse in the same litigation. Such patently improper dual representation suggests to the clients—and to the public at large—that the attorney is completely indifferent to the duty of loyalty and the duty to preserve confidences." *People ex rel. Dep't of Corps. v. SpeeDee Oil Change Sys., Inc.*, 20 Cal. 4th 1135, 1147 (1999) (internal citation omitted); *see also Flatt*, 9 Cal. 4th at 288 (The duty of loyalty owed to an existing client is "inviolate").

Ropes & Gray's emphasis on its creation of an ethical wall such that there was no breach of Guardant's confidentiality misses the mark. "Although an ethical wall may, in certain limited circumstances, prevent a breach of confidentiality, it cannot, in the absence of an informed waiver, cure a law firm's breach of its duty of loyalty to its client." *Concat LP v. Unilever, PLC*, 350 F. Supp. 2d 796, 822 (N.D. Cal. 2004). The interests of Guardant and FMI are directly in conflict in this litigation—Ropes & Gray cannot represent both without violating its duty of loyalty.

## CONCLUSION

For the reasons stated above, Guardant's motion to disqualify Ropes & Gray is GRANTED.

This action is stayed. However, new counsel shall enter an appearance on FMI's behalf on or before November 15, 2017. The parties shall appear for a Case Management Conference on November 30, 2017, at 1:30 p.m. in Courtroom F, 450 Golden Gate Ave., San Francisco, California. A Joint Case Management Conference Statement is due November 28, 2017.

This Order disposes of Docket No. 33.

**IT IS SO ORDERED.**

Dated: November 6, 2017

JACQUELINE SCOTT CORLEY
United States Magistrate Judge